**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| 3M COMPANY and 3M INNOVATIVE PROPERTIES COMPANY, | **COMPLAINT** |
| Plaintiffs, | Case No. 17-cv-725 |
| v. | |
| THUNDER FINISH, LTD., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiffs 3M Company and 3M Innovative Properties Company (collectively, "3M" or "Plaintiffs"), for their Complaint against Defendant Thunder Finish, Ltd. ("Thunder Finish" or "Defendant"), by their attorneys, allege as follows:

## INTRODUCTION

1. 3M is the leading innovator of products improving the preparation, consumption, and cleanup of paint and other liquids used in spray guns. 3M's innovations include its paint preparation system, marketed as the 3M™ PPS™ Paint Preparation System. 3M's PPS™ product, among other things, includes a disposable liner and lid with a built-in filter that improves and simplifies the mixing, use, and cleanup required when painting with a gravity-fed spray gun. The United States Patent and Trademark Office has recognized 3M's innovations, and has issued a number of patents covering various aspects of 3M's PPS™ technology, including U.S. Patent No. 9,211,553 (the "'553 Patent"). 3M's PPS trademark is registered with the United States Patent and Trademark Office (U.S. Reg. Nos. 4,156,991 and 2,861,036) (collectively the "PPS Marks"). U.S. Reg. No. 2,861,036 is incontestable pursuant to 15 U.S.C. § 1065.

2. Upon information and belief, Defendant is now selling, offering for sale, and/or importing into the United States lids and liners (the "Accused Products") that use 3M's patented technology in direct competition with 3M. Thunder Finish markets its products as "Paint Preparation System PPS" and depicts images of knock-off replicas of 3M's patented PPS™ products.

3. This is an action for patent infringement, trademark infringement, and false designation of origin under the laws of the United States, 35 U.S.C. §§ 271, 281–285 and 15 U.S.C. §§ 1114 and 1125. 3M brings this action to stop Defendant's infringing activities and to recover damages suffered by 3M due to Defendant's conduct. Defendant's conduct will irreparably harm 3M, which has devoted significant resources to its technology, intellectual property, commercial products, and brand. Thus, 3M also seeks preliminary and permanent injunctive relief against Defendant.

## THE PARTIES

4. Plaintiff 3M Company is a corporation organized and existing under the laws of the state of Delaware, and having its principal place of business at 3M Center, St. Paul, Minnesota 55133.

5. Plaintiff 3M Innovative Properties Company ("3M IPC") is a wholly-owned subsidiary of 3M Company with its principal place of business at 3M Center, St. Paul, Minnesota 55133.

6. On information and belief, Thunder Finish is a Chinese company having its principal place of business at 789 Fu Chun Road, Jia Ding District, Shanghai, China.

## JURISDICTION AND VENUE

7. This action arises under the patent laws of the United States, including 35 U.S.C. § 271, and the Lanham Act, 15 U.S.C. §§ 1114 and 1125.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 15 U.S.C. § 1121.

9. This Court has personal jurisdiction over Thunder Finish under Wis. Stat. § 801.05 and the due process clause of the U.S. Constitution because Thunder Finish transacts business in Wisconsin and has otherwise committed acts of infringement of one or more claims of the '553 Patent in and beyond Wisconsin causing injury to 3M in Wisconsin. On information and belief, Thunder Finish has continuous and systematic contacts with the state of Wisconsin, including intentionally selling its products into Wisconsin. Thunder Finish maintains extensive relationships with distributors and end users (such as automobile body shops and their employers) in the State of Wisconsin to deliberately cause the sale, offer for sale, and use of its products in the State of Wisconsin. The accused lids and liners for use in 3M's PPS™ system are among the products that Defendant deliberately causes to be imported, sold, offered for sale, and used in the State of Wisconsin, and Thunder Finish makes use of 3M's well known and famous PPS Marks in connection with the sale of its infringing products in Wisconsin and elsewhere.

10. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(b).

## 3M'S AWARD-WINNING PPS™ PRODUCT

11. In 1995, 3M engineers recognized that paint mixing, filtering, and spray gun loading processes were inefficient, messy, and time consuming, and resulted in significant amounts of solvent for post-use cleaning. At the time, painters typically mixed paint using a disposable

paint mixing container. Once mixed, the paint was poured through a disposable filter into a paint container connected to the spray gun.

12. In conventional gravity-fed spray guns, the paint container was typically screwed into the top of the spray gun via a threaded connector. Once painting was complete, the painter was required to clean both the gun and the residual paint in the paint container before continuing on to the next color or liquid (such as clear coat) to prevent contamination. This process was time-consuming and resulted in the use of significant amounts of cleaning solvent.

13. With those deficiencies in mind, 3M engineers set about to develop a paint mixing and deployment system that (1) reduced the costs associated with mixing and filtering, (2) minimized the cleaning of components that were contaminated with paint, and (3) reduced the time and labor required to prepare, use, and subsequently clean up the spray gun. 3M's efforts culminated in its PPS™ product.

14. In addition to the spray gun itself, 3M's PPS™ product includes various components, including a fluid reservoir, a collapsible liner, a removable lid (with built-in filter), and a removable collar. These components are depicted in the figure below.



**FIGURE 1**

15. One innovation of the PPS™ product is that it added a disposable, collapsible liner and corresponding lid. With this new feature, painters are able to prepare paint directly in the liner, without having to transfer the paint into the fluid container. Moreover, once painting is complete, the painter can simply discard the collapsible liner and connected lid. Because any residual paint is contained within the lid and liner, less cleaning solvent (and time) is required to clean the gun after use.

16. In addition to the investments 3M made in developing the PPS™ product and its corresponding intellectual property, 3M has made significant investment in industry education – sending 3M employees into collision repair centers across the country to teach the PPS™ process, and to communicate its benefits.

17. To support use of 3M's PPS™ products by the growing range of painters, 3M has distributed over one million machined stainless steel adapters (usually at no cost to the painters) that enable painters to connect 3M's PPS™ system to hundreds of different models of spray guns.

3M's primary revenue stream from the PPS™ product comes from its repeat sales of disposable liners and lids.

18. The industry and individual users have praised 3M's PPS™ system and acknowledged its considerable contributions with numerous awards and recognitions. Users have praised the benefits provided to their businesses and the environment (through reduced solvent usage). Exemplary global awards and recognitions include:

- "Product of the Year 2001" from the trade publications "*Bodyshop Magazine*" and "*Autotrade*" (United Kingdom);

- "Best New Product" award for the body and paints section at *Galeria de Innovacion Motortec 2001* (Spain);

- "Innovation Award" at a leading trade show organized by the trade publication "*Automotive Refinisher*" (South Africa);

- 2001 Grands Prix trophy in the Garage Equipment section of the premier auto trade exhibition, *Equip Auto* (France);

- Selected by *Design Council* as one of its 2001 "Innovation Stories" (United Kingdom);

- 2002 Horners Award for Plastics, for outstanding achievements in the plastics industry; and

- 2006 Society of Automotive Engineers (SAE) "Environmental Excellence in Transportation Award" in the service, maintenance, and logistics category.

**DEFENDANT'S SOLICITATION AND SALES OF THE ACCUSED PRODUCT**

19. Defendant markets the Accused Products through its website. As shown below, Defendant advertises the Accused Product as "650ml version paint preparation system PPS."



FIGURE 2

20. On information and belief, Defendant has been and is currently engaged in a mass marketing campaign to sell the Accused Products to companies throughout the United States, including in Wisconsin. Thunder Finish's sales manager, Justin Yang, has sent multiple emails to potential U.S. customers, offering to sell the Accused Products in the United States and in Wisconsin, specifically.

7

> Dear Sir,
>
> This is Justin from Thunder Finish, who specialized in automotive refinish industry.
>
> We have the strong advantages on price and quality, compared with other suppliers. As we have very deep cooperation with the manufacturers.
>
> And now we have the special offer for PPS CUPS with excellent quality:
>
> FOB price : USD $13.00/carton (1 carton includes 50pcs liners,50pcs lids 190 or 125micron, and 20 pcs caps)
>
> Let us know if you or your company interested in more products
>
> Waiting for your reply!
>
> Best regards
>
> Justin

**FIGURE 3**

21. Thunder Finish has also sold the Accused Product into the United States to 3M's customers in direct competition with 3M. This includes sales into this District. Thunder Finish's actions constitute direct infringement of the '553 Patent.

**THE '553 PATENT**

22. On December 15, 2015, a true and correct copy of the '553 Patent, entitled "Apparatus for Spraying Liquids, and Adapters and Liquid Reservoirs Suitable for Use Therewith" was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy is attached as Exhibit A to this Complaint.

23. The '553 Patent relates generally to an apparatus and methods for spraying liquids, such as spray guns, and liquid reservoirs for such apparatus, including disposable containers and liners.

24. All right, title, and interest in and to the '553 Patent have been assigned to 3M IPC, which is the sole owner of the '553 Patent.

25. 3M Company is the exclusive licensee of the '553 Patent.

26. The '553 Patent is currently in full force and effect.

## THE PPS<sup>TM</sup> MARKS

27. On July 6, 2004, the United States Patent and Trademark Office issued Registration No. 2,861,036 (the "'036 Registration") for PPS in connection with spray guns comprising cups and liners. A copy of the certificate of registration is attached as Exhibit B to this Complaint. The '036 Registration is incontestable pursuant to 15 U.S.C. § 1065.

28. On June 12, 2012, the United States Patent and Trademark Office issued Registration No. 4,156,991 (the "'991 Registration") for PPS in connection with paint spray equipment, including cups and collars, and lids and liners. A copy of the certificate of registration is attached as Exhibit C to this Complaint.

29. The trademark "PPS" is a strong, highly distinctive trademark that has been used prominently and continuously since at least as early as September 2, 2003 in connection with 3M's paint preparation products.

30. Upon information and belief, the public has come to recognize and to understand that the PPS Marks distinguish and identify 3M's paint preparation products with 3M.

31. All right, title, and interest in and to the PPS Marks is vested in 3M Company, which is the sole owner of the PPS Marks.

### FIRST CLAIM FOR RELIEF
(*Defendant's Infringement of the '553 Patent*)

32. 3M incorporates as if fully stated herein the allegations of the preceding paragraphs set forth above.

33. Upon information and belief, Defendant has infringed and continues to infringe, one or more claims of the '553 Patent, including at least claim 1 of the '553 Patent under 35 U.S.C.

9

§ 271(a). Specifically, Defendant without authority has made, used, sold, offered for sale, and/or imported, and continues to make, use, sell, offer for sale, and/or import into the United States the apparatus of claim 1 of the '553 Patent.

      34.      Claim 1 of the '553 Patent recites:

> 1. A spray gun paint reservoir comprising:
>    a liner comprising:
>       a base;
>       a sidewall;
>       an open end;
>       a rim at the open end; and
>       an internal surface;
>       the liner being self-supporting, but also being collapsible in use as a paint is withdrawn from the reservoir; and
>    a lid
>    that is a push-fit in the open end of the liner, the lid comprising:
>       an outwardly-extending rim adapted to sit on top of the liner rim;
>       a central aperture from which extends a connector tube adapted to connect the reservoir to a compatible spray gun, the central aperture and connector tube forming an outlet for paint from the reservoir; and
>       a filter mesh covering the central aperture.

      35.      The Accused Product includes a liner comprising a base, sidewall, open end with rim, and an internal surface, as depicted in Figure 2, above. As shown in the image, the liner is self-supporting. Because the liners are created from polyethylene, they collapse from negative pressure as paint is withdrawn from them.

      36.      Defendant's products also include a lid designed to push fit into their liners, as depicted in Figure 2, above. The lid includes an outwardly extending rim, which sits on top of Defendant's liners and comprises a central tube aperture that connects to a spray gun, and acts as an outlet for the paint from the reservoir. Based on Defendant's website, it sells the accused products with two different filter sizes—125 and 190 microns.

37. Thus, Defendant's products meet all of the limitations of at least claim 1 of the '553 Patent.

38. Defendant's acts of infringement have been without permission, consent, authorization, or license of 3M.

39. Upon information and belief, Defendant will continue to infringe the '553 Patent unless and until it is enjoined by this Court.

40. Defendant has caused and will continue to cause 3M injury and damage by infringing the '553 Patent. 3M will suffer further injury unless and until Defendant is enjoined from infringing the '553 Patent.

## SECOND CLAIM FOR RELIEF
*(Defendant's Trademark Infringement of the '036 Registration)*

41. 3M incorporates as if fully stated herein the allegations of the preceding paragraphs set forth above.

42. Upon information and belief, Defendant's use in interstate commerce of confusingly similar reproductions, copies, or colorable imitations of 3M's federally registered PPS mark depicted in the '036 Registration in connection with the sale, offering for sale, distribution, or advertising of, or in connection with, Defendant's goods are likely to cause confusion, or to cause mistake, or to deceive, by creating the false and misleading impression that Defendant's goods are manufactured and distributed by 3M, or are associated or connected with 3M, or are sponsored by, endorsed by, or approved by 3M.

43. Upon information and belief, Defendant's actions cause a likelihood of confusion and public deception in the marketplace, and injury to 3M's goodwill and reputation as symbolized in Plaintiffs' trademarked PPS mark for which 3M has no adequate remedy at law.

44. Upon information and belief, Defendant's actions demonstrate a willful, intentional, and malicious intent to trade on the goodwill associated with 3M's federally registered PPS mark, thereby causing immediate, substantial, and irreparable injury to 3M.

45. Upon information and belief, Defendant has caused, and is likely to continue causing, substantial injury to the public and to 3M, and 3M is entitled to injunctive relief, to recover Defendant's profits, actual damages, enhanced profits and damages, reasonable attorneys' fees and costs, and treble damages, pursuant to 15 U.S.C. §§ 1114, 1116, and 1117.

### THIRD CLAIM FOR RELIEF
*(Defendant's False Designation of Origin by Use of the '036 Registration)*

46. 3M incorporates as if fully stated herein the allegations of the preceding paragraphs set forth above.

47. Upon information and belief, Defendant's use in interstate commerce of the PPS mark depicted in the '036 Registration in connection with the Accused Product, has caused and/or is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with 3M, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by 3M.

48. Upon information and belief, Defendant's actions cause a likelihood of confusion and public deception in the marketplace, and injury to 3M's goodwill and reputation as symbolized in the PPS mark for which 3M has no adequate remedy at law.

49. Upon information and belief, Defendant's actions demonstrate a willful, intentional, and malicious intent to trade on the goodwill associated with 3M's PPS mark, thereby causing immediate, substantial, and irreparable injury to 3M.

50. Upon information and belief, Defendant has caused, and is likely to continue causing, substantial injury to the public and to 3M, and 3M is entitled to injunctive relief, to recover

Defendant's profits, actual damages, enhanced profits and damages, reasonable attorneys' fees and costs, and treble damages, pursuant to 15 U.S.C. §§ 1116, 1117, 1118, and 1125.

## FOURTH CLAIM FOR RELIEF
### (*Defendant's Trademark Infringement of the '991 Registration*)

51. 3M incorporates as if fully stated herein the allegations of the preceding paragraphs set forth above.

52. Upon information and belief, Defendant's use in interstate commerce of confusingly similar reproductions, copies, or colorable imitations of 3M's federally registered PPS mark depicted in the '991 Registration in connection with the sale, offering for sale, distribution, or advertising of, or in connection with, Defendant's goods are likely to cause confusion, or to cause mistake, or to deceive, by creating the false and misleading impression that Defendant's goods are manufactured and distributed by 3M, or are associated or connected with 3M, or are sponsored by, endorsed by, or approved by 3M.

53. Upon information and belief, Defendant's actions cause a likelihood of confusion and public deception in the marketplace, and injury to 3M's goodwill and reputation as symbolized in Plaintiffs' trademarked PPS mark for which 3M has no adequate remedy at law.

54. Upon information and belief, Defendant's actions demonstrate a willful, intentional, and malicious intent to trade on the goodwill associated with 3M's federally registered PPS mark, thereby causing immediate, substantial, and irreparable injury to 3M.

55. Upon information and belief, Defendant has caused, and is likely to continue causing, substantial injury to the public and to 3M, and 3M is entitled to injunctive relief, to recover Defendant's profits, actual damages, enhanced profits and damages, reasonable attorneys' fees and costs, and treble damages, pursuant to 15 U.S.C. §§ 1114, 1116, and 1117.

## FIFTH CLAIM FOR RELIEF
### (*Defendant's False Designation of Origin by Use of the '991 Registration*)

56. 3M incorporates as if fully stated herein the allegations of the preceding paragraphs set forth above.

57. 3M incorporates as if fully stated herein the allegations of the preceding paragraphs set forth above.

58. Upon information and belief, Defendant's use in interstate commerce of the PPS mark depicted in the '991 Registration in connection with the Accused Product, has caused and/or is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with 3M, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by 3M.

59. Upon information and belief, Defendant's actions cause a likelihood of confusion and public deception in the marketplace, and injury to 3M's goodwill and reputation as symbolized in the PPS mark for which 3M has no adequate remedy at law.

60. Upon information and belief, Defendant's actions demonstrate a willful, intentional, and malicious intent to trade on the goodwill associated with 3M's PPS mark, thereby causing immediate, substantial, and irreparable injury to 3M.

61. Upon information and belief, Defendant has caused, and is likely to continue causing, substantial injury to the public and to 3M, and 3M is entitled to injunctive relief, to recover Defendant's profits, actual damages, enhanced profits and damages, reasonable attorneys' fees and costs, and treble damages, pursuant to 15 U.S.C. §§ 1116, 1117, 1118, and 1125.

## **PRAYER FOR RELIEF**

WHEREFORE, 3M respectfully prays for judgment as follows:

a) Judgment that Thunder Finish has infringed one or more claims of the '553 Patent;

b) Judgment that Thunder Finish has infringed 3M's rights in the PPS Marks and falsely designated the origin of the Accused Products;

c) Preliminarily and permanently enjoining Thunder Finish and its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with any of them from further infringement of the '553 Patent and the PPS Marks;

d) An award to 3M of damages adequate to compensate it for all infringement occurring through the date of judgment, with prejudgment interest, and for any supplemental damages as appropriate and post-judgment interest after that date;

e) An award of enhanced damages and fees for willful infringement as permitted by law;

f) An award of actual damages, enhanced profits and damages, reasonable attorneys' fees and costs, and treble damages under 15 U.S.C. §§ 1114, 1117, and 1125.

g) An order that all infringing articles in Thunder Finish's possession, including but not limited to labels, signs, prints, packaging, and advertisements bearing the infringing marks be delivered to an officer of the Court to be destroyed, under 15 U.S.C. § 1118.

h) A finding that this action for infringement is an exceptional case under 35 U.S.C. § 285 and an award of reasonable attorney fees and costs; and

i) An award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), 3M hereby demands a trial by jury on all issues so triable.

Dated:  September 22, 2017

Respectfully submitted,

*s/Jerry W. Blackwell*

Jerry W. Blackwell
MN Atty ID No. 0186867
Corey L. Gordon
MN Atty ID No. 125726
WI Atty ID No. 1004917
**BLACKWELL BURKE P.A.**
431 South Seventh Street, Suite 2500
Minneapolis, MN  55415
T: (612) 343-3200  F:  (612) 343-3205
blackwell@blackwellburke.com
cgordon@blackwellburke.com


**AKIN GUMP STRAUSS HAUER & FELD LLP**
Michael Kahn (*pro hac vice* application forthcoming)
mkahn@akingump.com
One Bryant Park
New York, NY 10036
212-872-1000

Romeao Jennings (*pro hac vice* application forthcoming)
rjennings@akingump.com
4 Park Plaza, Suite 1900
Irvine, CA 92614
Tel:  949-885-4100
Fax:  949-885-4101

*Counsel for 3M Company and 3M Innovative Properties Company*